UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DAPHNE P. MCELLROY,

Plaintiff,

v. Case No. 8:25-cv-1063-CPT

FRANK BISIGNANO,
Commissioner of Social Security,

Defendant.
_____________________________/

# O R D E R

The Plaintiff seeks judicial review of the Commissioner's denial of her claim for Disability Insurance Benefits (DIB). For the reasons discussed below, the Commissioner's decision is affirmed.

## I.

The Plaintiff was born in 1974, obtained a four-year bachelor's degree, and has past relevant work experience as a regional credit manager, among other jobs. (R. 31, 42, 36, 285, 314). In November 2021, the Plaintiff applied for DIB, alleging disability as of July 2020 due to depression, spinal stenosis, anxiety disorder, right hip arthritis, multiple protruding discs, degenerative disc disease, root nerve impingement, chronic pain disorder, and neuropathy of the feet and left arm. (R. 313). The Social Security

Administration (SSA) denied the Plaintiff's application both initially and on reconsideration. (R. 18).

At the Plaintiff's request, an Administrative Law Judge (ALJ) conducted a hearing on the matter in November 2023. (R. 18). The Plaintiff was represented by counsel at that hearing and testified, as did a vocational expert (VE). *Id.* at 18, 24.

In a decision issued in February 2024, the ALJ determined that the Plaintiff: (1) had not engaged in any substantial gainful activity between her alleged onset date in July 2020 and her date last insured (DLI) of December 31, 2020; (2) had the severe impairments of neuropathy, right hip osteoarthritis, and cervical and lumbar degenerative disc disease (status-post lumbar fusion); (3) did not, however, have an impairment or combination of impairments that met or medically equaled the severity of any of the listed impairments through her DLI;[1] (4) had the residual functional capacity (RFC) to perform sedentary work subject to certain exertional, postural, and environmental limitations;[2] and (5) based on the VE's testimony, could engage in her past relevant work as a regional credit manager and could also make a successful adjustment to other occupations that exist in significant numbers in the national

[1] The listings are found at 20 C.F.R. Pt. 404, Subpt. P, App'x 1, and catalog those impairments that the SSA deems significant enough to prevent a person from performing any gainful activity. *See* 20 C.F.R. § 404.1520(a)(4)(iii). When a claimant's affliction matches an impairment on the list, the claimant is automatically entitled to disability benefits. *See id.*; *see also Edwards v. Heckler*, 736 F.2d 625, 628 (11th Cir. 1984).

[2] These limitations included that the Plaintiff could not climb ladders, ropes, or scaffolds; could occasionally climb ramps or stairs; could occasionally crawl, crouch, kneel, or stoop; and could frequently balance. (R. 23).

economy. (R. 20–32). Given these findings, the ALJ concluded that the Plaintiff was not disabled. (R. 32).

The Appeals Council denied the Plaintiff's subsequent request for review. (R. 1–3). Accordingly, the ALJ's decision became the final decision of the Commissioner. *Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309, 1313 (11th Cir. 2021) (citation omitted).

II.

To be eligible for DIB under the Social Security Act (the Act), a claimant must show that she was disabled "on or before the last date for which she [was] insured" (i.e., her DLI). *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam). This means that, in this case, the Plaintiff must establish that she was disabled between her alleged onset date in July 2020 and her DLI of December 31, 2020. *See McLain v. Comm'r, Soc. Sec. Admin.*, 676 F. App'x 935, 937 (11th Cir. 2017) (per curiam)[3] ("If a claimant becomes disabled after losing insured status, [her] DIB claim will be denied despite a disability."); *see also* (R. 20, 32).

The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R.

[3] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority. 11th Cir. R. 36-2.

§ 404.1505(a).[4] A physical or mental determinable impairment under the Act "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

To ascertain whether a claimant is disabled, the Social Security Regulations prescribe "a five-step, sequential evaluation process." *Carter v. Comm'r of Soc. Sec.*, 726 F. App'x 737, 739 (11th Cir. 2018) (per curiam) (citing 20 C.F.R. § 404.1520(a)(4)). Under this process, an ALJ must assess whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals one of the listings; (4) has the RFC to engage in her past relevant work; and (5) can perform other jobs in the national economy given her RFC, age, education, and work experience. *See Carter*, 726 F. App'x at 739 (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). Although the claimant has the burden of proof through step four, the burden temporarily shifts to the Commissioner at step five. *See Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1279 (11th Cir. 2020) (citation omitted); *see also Sampson v. Comm'r of Soc. Sec.*, 694 F. App'x 727, 734 (11th Cir. 2017) (per curiam) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). If the Commissioner carries his burden, the claimant must then prove she cannot engage in the positions identified by the

[4] Unless otherwise indicated, citations to the Code of Federal Regulations are to the version in effect at the time of the ALJ's decision.

Commissioner. *See Goode*, 966 F.3d at 1279. In the end, "the overall burden of demonstrating the existence of a disability . . . rests with the claimant." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (citation omitted).

A claimant who does not prevail at the administrative level may seek judicial review in federal court provided the Commissioner has issued a final decision on the matter after a hearing. *See* 42 U.S.C. § 405(g). Judicial review is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is buttressed by substantial evidence. *See id.*; *see also Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1305 n.2 (11th Cir. 2018) (per curiam) (citation omitted). Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (citations and quotation marks omitted). In resolving whether substantial evidence bolsters the Commissioner's decision, a court may not decide the facts anew, reweigh the evidence, or make credibility determinations. *See Viverette*, 13 F.4th at 1314 (citation omitted); *Carter*, 726 F. App'x at 739 (citing *Moore*, 405 F.3d at 1211). While a court will defer to the Commissioner's factual findings, it will not defer to his legal conclusions. *See Viverette*, 13 F.4th at 1313–14; *see also Keeton v. Dep't of Health & Hum. Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

III.

The Plaintiff's sole challenge on appeal is that the ALJ did not consider all the evidence relating to her back and neck problems in deciding whether she was able to engage in her past relevant work between July 2020 and her DLI of December 31, 2020. (Doc. 17 at 5–10). Upon a thorough review of the record and the parties' submissions, the Court finds that the Plaintiff's challenge is without merit.

As noted earlier, the ALJ's task at step four is to ascertain a claimant's RFC and her capacity to perform her past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545. To do so, an ALJ must discern based on all the pertinent evidence before him what a claimant can do in a work setting despite any physical or mental restrictions caused by the claimant's medically determinable impairments—severe and non-severe—and related symptoms. *See id*. § 404.1545(a)(2); *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1268–69 (11th Cir. 2019) (citation omitted).

An ALJ, however, is not required to expressly discuss every piece of evidence in his decision. *See Stowe v. Soc. Sec. Admin., Comm'r*, 2021 WL 2912477, at *4 (11th Cir. July 12, 2021) (per curiam) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam)). Instead, the ALJ need only ground his RFC determination on the claimant's condition "taken as a whole," *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) (citations omitted), after evaluating all the material information presented, 20 C.F.R. §§ 404.1520(e), 404.1545(a). As long as a court can glean from the ALJ's

decision that he took into account all the relevant evidence, the final responsibility for deciding a claimant's RFC rests with the ALJ. *Id.* § 404.1545.

In this case, the ALJ stated at the outset of his decision that he considered "all the evidence" of record, as well as "all of the [Plaintiff's] medically determinable impairments" in rendering his disability determination. (R. 19, 21). As pertinent here, this included an exhaustive review of the documentation compiled by the Plaintiff's healthcare professionals relative to her difficulties with her spine and her attendant subjective complaints. The ALJ began his discussion of this evidence with the general observation that while the Plaintiff suffered before her DLI from "cervical and lumbar degenerative disc disease status-post lumbar fusion, right hip osteoarthritis, and neuropathy," the medical record did "not support the intensity, persistence, or limiting effects of the [Plaintiff's] related symptoms[ ] to the disabling extent alleged." (R. 25).

The ALJ then proceeded to analyze the longitudinal treatment history pertaining to the Plaintiff's back and neck problems from April 2019 to October 2022 and the "pain management," "physical therapy," and other care she received. (R. 25–28). Among other things, the ALJ referenced that prior to her DLI in May 2019, the Plaintiff underwent a lumbar Magnetic Resonance Imaging (MRI) for her persistent complaints of low back pain and that this imaging revealed, inter alia, diffuse bulges and mild spinal canal stenosis at certain vertebrae.[5] (R. 25). The ALJ noted as well

[5] Broadly speaking, the human spine consists of four parts: the cervical spine (i.e., the neck); the thoracic spine (i.e., the upper and/or middle back); the lumbar spine (i.e., the lower back); and the sacral spine (i.e., the lowest part of the spine, which is just above the coccyx). *See generally* HOUSTON

that in July and August 2019, the Plaintiff presented for a follow up on her low back pain and experienced "some relief" after undergoing epidural steroid injections and physical therapy. *Id.* The ALJ further observed that during this same period, the Plaintiff also underwent cervical MRIs which showed good alignment, albeit with small central disc protrusions that were "interpreted to be mild degenerative changes without significant central or foraminal narrowing." *Id.* The ALJ commented too that the Plaintiff was diagnosed at the time with low back pain, degenerative disc disease, facet arthropathy,[6] and stenosis, and was treated with "inactions and physical therapy." *Id.*

In addition, the ALJ noted that in October 2019, the Plaintiff appeared at the emergency department with complaints of intense left side back and leg pain radiating up her spine. *Id.* The ALJ pointed out, however, that although the Plaintiff demonstrated tenderness and decreased sensation in portions of the affected area, she otherwise displayed "no edema, normal gait, intact sensation, full motor strength, and

---

D. SMITH, GEORGIA SOFT TISSUE INJURIES § 3-8 (Supp. Apr. 2021). The location of the vertebrae in the cervical, thoracic, lumbar, and sacral spine are referred to as C1, 2, 3, etc.; T1, 2, 3, etc.; L1, L2, L3, etc.; and S1, 2, 3, etc., respectively. *See* 4 ROSCOE N. GRAY & LOUISE J. GORDY, ATTORNEY'S TEXTBOOK OF MEDICINE § 13A.02 (3d ed. 2021). In his decision, the ALJ often identified particular vertebrae when detailing the Plaintiff's back and neck issues. Those precise descriptions are not recounted here for the sake of simplicity except where greater specificity is necessary.

[6] "[F]acet arthropathy (back arthritis) is a very common finding that occurs naturally with age-related wear and tear." *Rivers v. Donaway*, 2017 WL 3083689, at *4 (N.D. Fla. May 4, 2017), *report and recommendation adopted,* 2017 WL 3082668 (N.D. Fla. July 19, 2017); *see also* Cleveland Clinic, *Facet Arthropathy*, https://my.clevelandclinic.org/health/diseases/facet-arthropathy [https://perma.cc/2J6A-ZFPU] (last visited August 29, 2026) ("Facet Arthropathy is arthritis in the small joints of your spine.").

normal motor function" and "was treated with pain control, muscle relaxers, NSAIDS,[7] and narcotics." (R. 25–26).

The ALJ then proceeded to examine the record evidence reflecting the care the Plaintiff received in 2020, including the treatment she obtained during the insured period between July and December 2020. The ALJ referenced, among other things, that in March 2020, the Plaintiff underwent lumbar spine surgery at L5–S1 and that she thereafter reported "some initial improvement in her symptoms." (R. 27). The ALJ also observed that the Plaintiff reported improvement in her condition again in May and June 2020 and that, while she was still swollen, she indicated her "pain ha[d] decreased," the quality of her sleep had improved, and she was feeling better both "physically and emotionally." (R. 26). The ALJ additionally noted that the Plaintiff stated in this time frame that she was "very busy" with "her part-time business of selling broken jewelry[,]" which was "doing very well." *Id.*

Notwithstanding these positive developments, the ALJ remarked that by December 2020, the Plaintiff was "continuing to present with complaints of persistent low back pain and left lower extremity pain from the buttock down to the foot." (R. 27–28). The ALJ pointed out, however, that while the Plaintiff appeared at the time to be "in visible pain," she exhibited "full motor strength, negative straight leg

---

[7] NSAIDs—i.e., non-steroidal anti-inflammatory drugs—"includ[e] aspirin, ibuprofen and naproxen" and are used to "relieve the symptoms of pain and inflammation[.]" *G.D. Searle LLC v. Lupin Pharms., Inc.*, 2013 WL 12314683, at *5 (E.D. Va. Dec. 18, 2013); *accord J.F. v. O'Malley*, 2024 WL 1540727, at *3 n.2 (N.D. Cal. Apr. 8, 2024) (citation omitted).

raise testing, no edema, and a normal gait." (R. 27). The ALJ also pointed out that a lumbar MRI from November 2020 "showed slight improvement in [the Plaintiff's] canal stenosis" following her surgery, although the ALJ acknowledged that some stenosis remained in the L5–S1 region. *Id.*

Along with detailing this evidence, the ALJ engaged in an in-depth discussion of the treatment the Plaintiff received for her back and neck problems in 2021, 2022, and 2023, all of which was well after her DLI. (R. 26–28). This care included surgical interventions, medication management, injection therapy, physical therapy, and aqua therapy. *Id.*

As for the Plaintiff's subjective complaints of pain associated with her spine issues, the ALJ found that they were "internally inconsistent and somewhat unsupported by the reported information." (R. 24); *see also* (R. 23) (finding that while the Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms[,] . . . the [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms [we]re not entirely consistent with the medical evidence and other evidence in the record"). To buttress this assessment, the ALJ cited not only medical evidence, but also the Plaintiff's own statements. *Id.* at 24–25. The ALJ highlighted in the latter regard:

> Though the [Plaintiff] alleged disabling exertional, postural, manipulation, mental, and social limitations, she also reported that she could still watch movies with lots of breaks, follow written instruction[s], walk one block daily with use of a prescription cane for longer trips, sweep, clean countertops, do laundry with lifting assistance, garden and

> do some other household chores with extra time, play handheld video games, go outside with accompaniment, drive up to [twenty] minutes, ride in a car for up to 120 minutes, shop online, handle her personal care without assistance, spend time with others in person and over video chat, get along with friends, family, neighbors, and authority figures, attend her appointments with accompaniment, remember her medications, handle her own finances, and assist in taking care of her dogs.

(R. 24).

In her legal memorandum, the Plaintiff does not dispute the ALJ's credibility determination concerning her reported symptoms.[8] Instead, as mentioned above, she contends that the ALJ neglected to consider certain medical records and other evidence relative to the insured period. (Doc. 17 at 5–10). The specific items the Plaintiff cites are: (1) a June 2020 "interim report" which indicated that although the Plaintiff complained of significant back pain, "she was still doing well overall, was weaning off the back brace [from her March 2020 surgery], and [was] walking a mile every day;" (2) a September 21, 2020, treatment note which, inter alia, "show[ed] that [the Plaintiff] developed back pain [two-to-three] months earlier" and that she displayed "severe tenderness bilaterally[;]" (3) documentation from the Plaintiff's physical therapy sessions between September 21, 2020, and November 4, 2020, which reflected that she "sometimes . . . reported mild improvement and

---

[8] The Plaintiff's failure to contest this finding constitutes a waiver on the matter. *See Grant v. Soc. Sec. Admin., Comm'r*, 2022 WL 3867559, at *2 (11th Cir. Aug. 30, 2022) (citing *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681–82 (11th Cir. 2014)); *Battle v. Comm'r, Soc. Sec. Admin.*, 787 F. App'x 686, 687 (11th Cir. 2019) (per curiam); *Outlaw v. Barnhart*, 197 F. App'x 825, 828 n.3 (11th Cir. 2006) (per curiam) (citation omitted).

sometimes . . . reported feeling worse from therapy;" and (4) a single sentence from a physician's review of the November 2020 MRI, which stated: "[The Plaintiff] also ha[d] stenosis at L4-5 with bilateral foraminal stenosis and[,] at L3-4[,] there appear[ed] to be a new foraminal disc herniation." (Doc. 17 at 5–9) (citations omitted). The Plaintiff maintains that this evidence bolsters her hearing testimony that "her disc above the [area where the] surgery [was performed in March 2020] collapsed around July 1, 2020" (i.e., the L3–L5 region) and that the ALJ failed to take into account this impairment at L3–L5 in arriving at his disability ruling. *Id*. at 6. The Plaintiff's argument fails.

As described above, the ALJ attested early on in his decision that he evaluated "all the [record] evidence" and "all . . . the [Plaintiff's] medically determinable impairments" in rendering his disability determination. (R. 19, 21). This attestation is amply supported by the ALJ's thorough recitation of the above medical documentation regarding the Plaintiff's difficulties with her spine and her associated symptoms. (R. 23–30).

Moreover, contrary to the Plaintiff's assertions, the ALJ's evidentiary review encompassed treatment notes and other materials pertaining to her spinal issues at L3–L5. The ALJ discussed this documentation extensively in his decision and acknowledged that the Plaintiff continued to experience back and neck-related problems—including at L3–L5—following her March 2020 surgery. (R. 25–28).

The fact that the ALJ did not explicitly mention a certain treatment note or a certain passage from an imaging report during his comprehensive analysis of the record evidence does not alter this conclusion. *See Stowe*, 2021 WL 2912477, at *5. As explained previously, the operative inquiry is whether the ALJ considered the totality of the pertinent information before him and crafted an RFC based on the Plaintiff's condition taken as a whole. *See* 20 C.F.R. §§ 404.1520(e), 404.1545(a); *Jamison*, 814 F.2d at 588. The Court finds that the ALJ did so here, and that his findings are adequately substantiated.

To the extent the Plaintiff now invites the Court to reweigh the record evidence, *see, e.g.*, (Doc. 17 at 8–9), the Court is prohibited from doing so. *See Carter*, 726 F. App'x at 739 (cautioning that a court "may not decide the facts anew . . . or re-weigh the evidence") (citing *Moore*, 405 F.3d at 1211); *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (noting that when the Commissioner's decision is buttressed by substantial evidence, a court must affirm it even if the court would have reached another result and even if "the evidence preponderates against" the Commissioner's decision). And to the extent that the Plaintiff suggests that other information in the record bolsters her challenge (Doc. 17 at 8–10), the existence of such other evidence is irrelevant given the circumstances presented here, *see Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017) (per curiam) ("Under a substantial evidence standard of review, [a claimant] must do more than point to evidence in the record that supports her position; she must show the absence of

substantial evidence supporting the ALJ's conclusion.") (citing *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991) (per curiam)).

IV.

For the foregoing reasons, it is hereby ORDERED:

1. The Commissioner's decision is affirmed.

2. The Clerk is directed to enter Judgment in the Defendant's favor, to terminate any pending motions and deadlines, and to close the case.

SO ORDERED in Tampa, Florida, this 3rd day of September 2026.

HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

Copies to:
Counsel of record